UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH THOMAS BARTUCCI, JR. | * | CIVIL ACTION |
| VERSUS | * | NO. 04-2977 |
| MICHAEL J. JACKSON | * | SECTION "L"(5) |

ORDER

Before the Court is Plaintiff's Motion for Reconsideration (Rec. Doc. No. 90), heard with oral argument on June 7, 2006. The Court has studied the legal memoranda submitted by the parties, the record and the applicable law. It is now fully advised on the issue and ready to rule. For the following reasons, the motion is DENIED.

I. Factual and Procedural Background

This case arises out of events that allegedly took place between May 19 and 27, 1984. Plaintiff Joseph Bartucci alleges that, while Defendant Michael Jackson was in New Orleans for a concert, Mr. Jackson and his representatives falsely imprisoned Mr. Bartucci and transported him to California. During that period, Mr. Bartucci alleges that Mr. Jackson sexually assaulted him repeatedly, both in Mr. Jackson's limousine and in an unknown building in California. In particular, Mr. Bartucci alleges that Defendant and his agents inflicted a wide range of abuse and violence upon him, including allegations that the Plaintiff was cut with razor blades, jabbed with steel wires, bitten, and drugged, and that his head was beaten on concrete by one of Mr. Jackson's bodyguards. Mr. Bartucci claims he has suffered severe and debilitating physical and psychological injuries due to these events, and has brought claims for assault, battery, false imprisonment, and intentional infliction of emotional distress.

Mr. Bartucci alleges that his claims survive prescription. Mr. Bartucci alleges that, due to repressed memories, he had no knowledge of the 1984 events until November 29, 2003. In 2003, Mr. Bartucci recalled what had allegedly happened to him as he watched a Court TV special regarding Mr. Jackson's recent trial in California. Thus, Mr. Bartucci argues that because of his repressed memories he suffered under a disability and was rendered incapable of bringing suit.

Plaintiff filed his complaint in this Court on November 1, 2004. Plaintiff's initial counsel of record withdrew from the case in January 2005 and provided sealed documents to the Court at that time in support of his motion to withdraw. In December 2004, the Defendant answered the complaint, and his initial counsel sought a protective order limiting the scope of discovery in the case. Magistrate Judge Alma L. Chasez denied that motion in March 2005. Mr. Jackson's counsel re-urged that motion before this Court, but the motion was continued because initial counsel withdrew from the case on April 29, 2005. In July and August 2005, the Court ordered Mr. Jackson to appear because he was unrepresented by counsel. The Court fined Mr. Jackson $10,000 in August 2005 for his failure to appear in July.

On December 29, 2005, Defendant filed a motion to dismiss or alternatively for summary judgment which was heard with oral argument on January 18, 2006. At oral argument, the Court believed that the deposition of Plaintiff's treating physician, Dr. Tetlow, would be useful to clarify the basis for Plaintiff's argument that his claims survive prescription. The Court ordered Plaintiff to depose Dr. Tetlow and to supplement their briefs by early February 2006.

Defendant in support of his motion for summary judgment provided the Court with two affidavits, among other documents. Wayne Nagin, a personal assistant to the Defendant in 1984, provided an affidavit stating that Mr. Jackson was in California during the period in question in this case, and Mr. Nagin provided copies of his calendar from the weeks in question in 1984.

(Rec. Doc. No. 70).  Charilette R. Sweeney also provided an affidavit in which she stated that she attended the same church in California as the Defendant in May 1984, and that she recalls seeing him and speaking with him in California on several of the dates at issue in this case. (Rec. Doc. No. 79).

To controvert this evidence, Plaintiff relied upon his own sworn answers to interrogatories in which he stated that he was with Mr. Jackson in May 1984 in New Orleans. Plaintiff also supplied several affidavits.  In his affidavit, Malcolm Boudreaux, a retired New Orleans Levee Board police officer, recalled that sometime in the spring of 1984, he spoke with a limousine driver at the World's Fair in New Orleans and this individual told him that Michael Jackson was inside the limousine he was driving.  (Rec. Doc. No. 66).[1]  Plaintiff also submitted an affidavit of Mark Ellis, a former limousine driver of Defendant, who stated that he was prepared to take an unspecified cross-country trip with Michael Jackson in May 1984, but that the driver was informed he would not accompany Mr. Jackson on the trip.  *Id.*  Also, Thomas Newton provided an affidavit in which he stated that his company rented a limousine to representatives of Michael Jackson for a trip in May 1984 from Los Angeles to Boca Raton, Florida.  *Id.*

Upon reviewing this evidence, the Court found that Plaintiff had not met his burden of rebutting Defendant's sworn affidavits in support of his motion for summary judgment.  Because there was no genuine issue of fact as to whether Mr. Jackson was in New Orleans in May 1984, the Court granted summary judgment for Defendant and dismissed Plaintiff's case.

On April 28, 2006, Plaintiff filed the instant Motion for Reconsideration.  The Defendant

---

[1] Plaintiff subsequently filed a second affidavit of Mr. Boudreaux on August 25, 2006 to clarify the first affidavit (Rec. Doc. No. 112).  In the second affidavit, Mr. Boudreaux states that he spoke with the unidentified limousine driver at the World's Fair in New Orleans approximately one week after it opened on May 12, 1984.

opposes this motion. The Court shall now address the parties' arguments.

## II. Plaintiff's Motion for Reconsideration

The procedural grounds for Plaintiff's motion are unclear from the face of the motion. Apparently the motion is grounded in Rule 59(e) of the Federal Rules of Civil Procedure as a motion to alter, amend, or vacate the Court's judgment, and in Rule 60(b) as a motion for relief from judgment. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993).

Under Rule 59(e), a court may reopen a case that has gone to final judgment if a party demonstrates a manifest error of law or fact or newly discovered evidence. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The motion should be used sparingly, and the motion is not a proper vehicle for "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478-79. The Court must consider the evidence in the record at the time of the motion for reconsideration as well as the time of judgment. *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 349 (5th Cir. 1989). Under Rule 60(b), a party may seek relief of judgment for any reason justifying such relief, including the rule's enumerated reasons like mistake and excusable neglect. Fed. R. Civ. P. 60(b). In particular, the Court when evaluating a Rule 60(b) motion should balance the need for finality of judgment against the need to render just decisions, based upon all the operable facts. *Bohlin*, 6 F.3d at 356.

Both sides have asked the Court to consider the other party's prior history in ruling upon this motion. In an early brief, Defendant submitted an unverified copy of Plaintiff's extensive history of civil litigation. (Rec. Doc. No. 61). Plaintiff's civil history revealed some eighteen civil and criminal suits filed either by or against the Plaintiff in the last seventeen years; the suits include allegations of sexual abuse against a minister, charges of stalking and bigamy, and allegations of his connection to a fraudulent insurance scheme, among others. This unverified

evidence was not in proper form for consideration upon summary judgment.  The Plaintiff also asks the Court to consider the Defendant's prior civil litigation involving allegations of child molestation.  As has been well-publicized, Defendant was tried and acquitted for sexual abuse of a minor in California in 2005, and there have been prior, similar allegations against the Defendant.

Each side is mistaken in their beliefs that any of these prior acts are relevant for purposes of this motion.  This prior history was not considered, and should not have been considered, when the Court ruled upon Defendant's motion for summary judgment.  Accordingly, the Court now addresses the parties' substantive arguments.

Plaintiff's central argument in support of its Motion for Reconsideration is that the Court failed to take into account the Plaintiff's sworn answers to interrogatories, which were verified on January 17, 2006.  (Rec. Doc. No. 74).  Plaintiff argues that these discovery responses should be afforded significant weight because they provide detailed allegations that rebut the affidavits supporting Mr. Jackson's argument that he was not in New Orleans on the dates in question in May 1984.  Further, Plaintiff contends that he should be allowed to take the depositions of the Defendant, Mr. Nagin and Ms. Sweeney, among others.

Defendant argues that the Court's decision was correct, but cites no law in support of its position.  Defendant argues that he has provided compelling, corroborated evidence that he was not in New Orleans during the period at issue, and that the Court should not waste any more time with this vexatious, frivolous litigation.

It has long been established that, if they comply with the evidentiary standards of Rule 56(e) of the Federal Rules of Civil Procedure, a party's verified answers to interrogatories may serve as support or rebuttal of a motion for summary judgment.  *See Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 154 (5th Cir. 1965) (stating that verified pleadings

may serve as summary judgment evidence in a proper case). Moreover, it is also well-established that a party's own sworn affidavit or sworn pleadings can serve to create a genuine issue of material fact sufficient to defeat a motion for summary judgment. *See, e.g., Dibidale of La., Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 307-08 (5th Cir. 1990) (finding genuine issue of material fact from affidavit of a party's agent); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) ("a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition"). It is further well-established that a district court is not permitted to make credibility determinations or to resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Dibidale*, 916 F.2d at 307-08.

Some review of the essential legal standards behind summary judgment is useful here. One of the central purposes of the motion for summary judgment in the federal system is as a "device for unmasking frivolous claims and putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). *See also Washington Post Co. v. Keogh*, 365 F.2d 965, 967-68 (D.C.Cir. 1966) ("Summary judgment serves important functions which would be left undone if courts too restrictively viewed their power. Chief among these are avoidance of long and expensive litigation productive of nothing, and curbing the danger that the threat of such litigation will be used to harass or coerce settlement.") (internal citations omitted). Thus, at summary judgment, the district court serves the role of gatekeeper, as it has a "responsibility to decide whether a genuine issue of fact exists" before the case will be allowed to proceed to trial. *Keogh*, 365 F.2d at 967.

Accordingly, upon a motion for summary judgment, a district court must determine whether a genuine issue of material fact exists. A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. In this case, Michael

Jackson's alleged presence in New Orleans sometime between May 19 and 27, 1984 is clearly a factual predicate for Plaintiff's claims and is thus a material fact. More importantly for this motion, a dispute about a material fact must be genuine, meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" *Id.*

When a moving party has met its burden under Rule 56(c) of the Federal Rules of Civil Procedure to show there is no genuine issue of material fact, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[H]e must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Quinn*, 613 F.2d at 445. This means that the opponent must come forward with "specific facts" showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

In particular, "if the factual context renders respondent's claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita,* 475 U.S. at 587. A non-moving party must come forward with more than "conclusory allegations, speculation, and unsubstantiated assertions" once the moving party has met his burden for summary judgment. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996). If the evidence brought forth by the non-moving party is "merely colorable" or is "not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50.

Moreover, while many courts have accepted a plaintiff's own affidavit, deposition, or verified pleadings to defeat summary judgment, a number of courts have rejected this proof when the plaintiff's statements are self-serving and conclusory. *See Evans v. City of Chicago*, 434 F.3d 916, 933 (7th Cir. 2006) ("as this court has repeatedly held, the self-serving affidavit of a plaintiff is *ipso facto* insufficient to create a genuine issue of material fact"); *Fanslow v.*

*Chicago Manuf. Center, Inc.*, 384 F.3d 469, 483 (7th Cir. 2004) ("a plaintiff cannot defeat summary judgment by submitted a self-serving affidavit that contains the bald assertion of the general truth of a particular matter") (internal citations and quotations omitted); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record") (internal citations and quotations omitted); *Guldin v. Conoco, Inc.*, 37 Fed.Appx. 712 (5th Cir. 2002) ("Guldin offers only his own self-serving and conclusory affidavit ... [t]he district court correctly concluded that Guldin's affidavit was no bar to entry of summary judgment").

The requirement that the dispute of material fact must be "genuine" is the central distinction between this case and the cases Plaintiff cites in support of his motion for reconsideration. Plaintiff relies upon a number of cases in other circuits in which a party's own affidavit or deposition was sufficient to defeat a motion for summary judgment. *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56-57 (2d Cir. 1998); *Wilson v. Williams*, 997 F.2d 348, 350-51 (7th Cir. 1993); *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992); *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1231 (3d Cir. 1988); *Mumphree v. United States Bank of Utah*, 282 F.Supp.2d 1294 (D. Utah 2003). However, there is a key distinction between the instant case and these cases: Plaintiffs' answers to interrogatories in this case do not create a "genuine" issue of material fact.

Plaintiff argues that his sworn answers to interrogatories provide a wealth of details about the alleged molestation itself, and as such, Plaintiff argues his answers are specific rebuttals, not conclusory allegations. However, Plaintiff misstates the inquiry. The issue of material fact that Plaintiff must rebut in this motion is not whether the molestation occurred in the manner that Plaintiff describes it, but <u>whether Michael Jackson was in New Orleans in May 1984</u>. Plaintiff's

attempt at rebuttal of Defendant's proof <u>on this issue</u> is conclusory and non-specific.  Plaintiff provides the following proof that Defendant was in New Orleans during the period in question: 1) his own sworn statement that Michael Jackson was in town, which he admits to having repressed over twenty years 2) the affidavits of Malcolm Boudreaux, who recounts his conversation sometime in the week following May 12, 1984 with an unnamed limousine driver who stated that Michael Jackson was in New Orleans, 3) the affidavit of Mark Ellis, a limousine driver who stated that he heard that Michael Jackson was to take an unspecified "cross-country trip" in May 1984, but the affiant did not accompany him on the trip and does not know if such a trip actually occurred, and 4) the affidavit of Thomas Newton, who rented a limousine to Michael Jackson's representative for a trip from California to Florida in May 1984.

It is unclear that Malcolm Boudreaux or Mark Ellis would be able to provide admissible testimony at trial; there appears to be hearsay problems with the proposed testimony.  While there is no requirement that the evidence presented at summary judgment be in a form that would be admissible at trial, there must be a "showing" of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  Moreover, even if Mr. Boudreaux and Mr. Ellis were to testify, their testimony is conclusive of nothing.  Neither can remember specific dates.  Neither of them state the names of the people to whom they spoke.  Most importantly, none of the affidavits specifically place Michael Jackson in New Orleans from May 19 to 27, 1984.  While Mr. Newton's affidavit suggests that a limousine rented by Michael Jackson may have traveled through Louisiana sometime in May 1984, it too is non-specific in that it does not state that Mr. Jackson himself used this limousine or that the limousine traveled through New Orleans.  Similarly, Mr. Boudreaux states in his second affidavit that he went to the World's Fair in New Orleans approximately one week after it opened on May 12, 1984, but he admits that at no time did he actually see Michael Jackson or witness other physical evidence of his presence besides

the fact that he spotted a white limousine with a California license plate.  His statement that an unidentified individual told him that Michael Jackson was inside the limousine is also too vague to be sufficient.  These affidavits simply do not provide the concrete, specific facts needed to create a "genuine" issue of material fact as to Michael Jackson's whereabouts.

Plaintiff's allegations of abuse in this case are severe and extraordinary, and include descriptions of acts of violence against the Plaintiff.  However, Plaintiff has been unable to produce any contemporaneous evidence, medical or otherwise, that the incidents he describes actually occurred.  He is also unable to produce any credible evidence other than mere speculation as to the Defendant's presence in New Orleans at the time in question.  Given the extreme nature of Plaintiff's allegations, the fact that he cannot substantiate a basic predicate for his claim like Michael Jackson's whereabouts leads the Court to believe that summary judgment was appropriately granted.  If the moving party's evidence renders the opponent's claim "implausible" or even "merely colorable," the opponent must come forward with a showing of concrete, specific facts that are in dispute.  *Anderson*, 477 U.S. at 249-50; *Matsushita,* 475 U.S. at 587.  Plaintiff simply has not done that here.

On the other hand, Defendant has presented two affidavits that provide concrete, specific recollections and documentary evidence that Michael Jackson was in California from May 19 to 27, 1984.  Wayne Nagin provides his daily calendar of Mr. Jackson's activities during those weeks, and Charilette Sweeney remembers seeing and speaking with Mr. Jackson in California on specific dates in May 1984.  Based upon the showings of both parties, the Court finds that no reasonable jury could find that Michael Jackson was in New Orleans from May 19 to 27, 1984.  Thus, there is no "genuine" issue of material fact, and summary judgment was appropriately granted.

The Court is not resolving factual disputes here; the Court is merely observing that there

is no factual dispute as to the whereabouts of Michael Jackson at the time in question. The Court finds it improper to give the Plaintiff an opportunity to conduct further discovery, such as the depositions of the Defendant and his two witnesses. As stated previously, the Plaintiff's accusations allegedly took place over twenty years ago. Defendant has provided evidence that he was not in New Orleans during the relevant time period, and Plaintiff's only specific rebuttal is his own sworn answers to interrogatories. No reasonable juror would conclude that the Defendant was in fact present. To allow further discovery and expense of time and financial resources is not appropriate in this case.

Plaintiff's argument in support of his motion for reconsideration is a dangerous one. A plaintiff cannot be allowed to transform his mere allegations and unsubstantiated assertions into substantial evidence by having the assertions placed in an affidavit or verified form. To do so would be to allow an individual to protract needlessly a meritless case, and would incur wasteful costs for both the judicial system and for the individuals who must expend time and resources to defend against baseless allegations. This is exactly the result that the summary judgment procedure is intended to avoid. As the U.S. Supreme Court has stated, the "mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Because Plaintiff has failed to rebut Defendant's evidence regarding his whereabouts, summary judgment was properly granted for Defendant.

**III. Conclusion**

Accordingly, Plaintiff's Motion for Reconsideration is hereby DENIED.

New Orleans, Louisiana, this __12th__ day of September, 2006.

_____
UNITED STATES DISTRICT JUDGE